BOLIN, Judge.
Retail Merchants Association, Incorporated, sued Robert Love in Shreveport City Court on an assigned account from Fay Wilson Employment Agency for $122.25, the balance allegedly due on an employment procurement contract. Following trial, and judgment in favor of plaintiff for $118.‘I0, defendant has appealed. We amend the judgment to reduce the award to $15.11.
In lieu of a transcript of the testimony, a narrative of facts, agreed to by counsel for both parties, and documentary evidence were filed in the record.
The employment contract with Fay Wilson Employment Agency was signed by Robert Love on December 14, 1972. Love was not placed in a permanent job but went to work for Temporary Employment Services, Incorporated, of which Fay Wilson was a part owner. Defendant was sent to work at Piggly Wiggly Operators’ Warehouse, Incorporated, under an arrangement whereby Piggly Wiggly paid Temporary Employment for the use of Love and Love was paid by Temporary Employment. This arrangement lasted for approximately seven weeks after which Love went to work for Piggly Wiggly as its own employee.
*27 From March 26, 1973, through May 8, 1973, a period of seven weeks, Love worked as a regular employee of Piggly Wiggly Warehouse. On or about May 8, 1973, Piggly Wiggly had a strike which continued through November, 1973. Thereafter defendant went back to work for Piggly Wiggly on a regular basis and, according to the record, was continuing to work there at the time of the trial.
When defendant first went to work for Piggly Wiggly on a regular basis he commenced making payments of $15 per week on the fee to Fay Wilson Agency, and had paid a total of $60 when the strike started. The receipts show that the agency originally charged a fee of $182.25 and the balance after his last payment was $122.25, for which this suit was brought. After the strike started defendant wrote the employment agency and advised that he was not making payments as he was not working because of the strike, but that he would start paying again when he resumed work. Although defendant went back to work for Piggly Wiggly in the latter part of November, 1973, he did not resume payments on the alleged employment fee.
On appeal defendant first contends he does not owe Fay Wilson Employment Agency anything in connection with his employment by Piggly Wiggly; that, if anything, he would only owe a fee on the work he performed for Temporary Employment to which he was referred by Fay Wilson Agency; that during this period, from December, 1972 until he went to work for Piggly Wiggly as its own employee, Mrs. Wilson neither deducted nor credited defendant with any amount toward the fee which he might have owed Fay Wilson Employment Agency. Alternatively, defendant argues his employment with Piggly Wiggly was “temporary”, as defined by the contract, and as such would require a reduced fee.
Necessary to a decision of the case before us is an interpretation of the following portions of the contract:
“3. Should I accept a position to which you have referred me, directly or indirectly within 6 months of referral, I agree to pay a fee for professional services in accordance with the schedule contained herein. (Emphasis ours)
[Schedule of maximum fees charged applicants for employment based on monthly or annual salaries]
“For temporary work, the fee charged applicants shall not exceed 10% of the gross earned, but never more than the maximum which would have been charged on an annual salary as a fee for a permanent position.
“4. Acceptance means agreement by me with an employer to begin work.
* * *
“7. Permanent employment means employment which lasts 90 days or more.
“8. Temporary employment means employment which lasts less than 90 days. If my job becomes temporary for reasons beyond my control, I agree to pay you 10% of my gross earnings. Should I quit my job, or should my job become temporary due to other reasons within my control, then I agree to pay 50% of my gross earnings, or the original fee, whichever is the smaller of the two.”
Initially, we observe the only employment to which defendant was referred by the Fay Wilson Agency was with Temporary Employment Services, Inc., an entirely different entity from Fay Wilson Employment Agency. But for the fact that Temporary Employment Agency sent defendant to work for Piggly Wiggly, it is reasonable to conclude he would not have been hired by that company without a break in his employment. Since the employment with Piggly Wiggly flowed as a natural consequence from his employment with Temporary Employment Agency we find the Fay Wilson Agency was indirectly responsible for his employment within six months of the signing of the employment procurement contract.
*28 The remaining issue is whether defendant’s employment in this case was temporary (less than 90 days) or permanent (90 days or more). We find defendant worked as a regular employee for Piggly Wiggly only six weeks before the strike, which lasted more than six months. The record is devoid of evidence as to whether defendant was in any way responsible for the strike or had any assurance he would regain his job when the strike was terminated. As a consequence we conclude Robert Love’s employment was temporary. Under the contract the maximum fee for temporary employment is to be computed at 10% of the gross earned. During the period from the end of March 1973 through the end of April 1973, defendant received wages totaling $751.13, ten per cent of which is $75.11. The receipts in evidence show defendant paid Fay Wilson Agency $60, which leaves a balance of $15.11.
The judgment is amended to reduce the award to $15.11, and as thus amended is affirmed at plaintiffs cost.